UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER W. PACE,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>GEORGE JAIME, Warden,<br><br>　　　　Respondent. | Case No. 17-cv-01046-HSG (PR)<br><br>**ORDER GRANTING MOTION TO DISMISS; DENYING CERTIFICATE OF APPEALABILITY**<br><br>Re: Dkt. No. 24 |

Petitioner, a *pro se* prisoner, filed this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Respondent has moved to dismiss the petition as untimely and procedurally defaulted.[2] Petitioner has filed an opposition, and respondent has filed a reply.

## BACKGROUND

On June 22, 2007, in the Alameda County Superior Court, petitioner pleaded no contest to attempted murder and admitted using a firearm in the commission of the crime, arising from an April 21, 2005 incident in which he fired multiple shots at his former co-worker, Krisida Taylor, while she was allegedly on the ground. Dkt. No. 1 at 1-2, 23.[3] On August 31, 2007, the trial court sentenced petitioner to twenty-five years in prison.[4] *Id.* at 1; Ex. A.[5] Petitioner did not appeal.

---

[1] This action was previously assigned to Magistrate Judge Howard R. Lloyd. Magistrate Judge Lloyd initially dismissed the action for failure to pay the filing fee, and then reopened it after petitioner submitted evidence that the filing fee had been processed. *See* Dkt. Nos. 6, 10.

[2] Petitioner initially named John Garza, the former warden at California City Correctional Facility, where petitioner is incarcerated, as the respondent in this action. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and Rule 2(a) of the Rules Governing Habeas Corpus Cases Under Section 2254, George Jaime, the current warden of California City Correctional Facility, is hereby SUBSTITUTED as respondent in place of the previously named respondent.

[3] All page numbers used herein refer to those affixed to the top of the page by the Court's electronic filing program.

[4] Respondent incorrect indicated that petitioner received a sentence of "25 years to life in prison." Dkt. No. 24 at 2.

[5] All references herein to exhibits are to the exhibits submitted by respondent in support of the motion to dismiss.

Dkt. No. 1 at 2-3.

In 2008, petitioner began filing multiple state habeas petitions in the Alameda County Superior Court, which were denied based on the following: failure to state a prima facie case, *see* Ex. B (dated August 28, 2008); and the rule barring successive petitions and untimeliness, *see* Exs. C (dated October 20, 2010) & F (dated May 4, 2016 and June 17, 2016). In 2012 and 2013, petitioner filed ex parte requests in the Alameda County Superior Court, which were denied based on lack of jurisdiction to entertain his requests, including requests for: copies of "counsel's file" (filed February 27, 2012 and denied April 9, 2012); copies of "trial files" (filed July 23, 2012 and denied August 21, 2012); copies of the "police report and medical reports" (filed April 13, 2012 and denied December 27, 2012); and copies of his "docket" (filed March 14, 2013 and denied April 23, 2013). *See* Exs. D-E.

On July 12, 2016, petitioner filed a state habeas petition in the California Court of Appeal, which was summarily denied on July 14, 2016. *See* Ex. G.

On November 3, 2016, petitioner filed a state habeas petition in the California Supreme Court, which was denied on December 21, 2016 as untimely, with a citation to *In re Robbins*, 18 Cal. 4th 770, 780 (1998). *See* Exs. A, H.

Petitioner then filed this action, seeking a writ of habeas corpus. The petition has a signature date of February 14, 2017 and was stamped "filed" at the Court on February 28, 2017. As a *pro se* prisoner, petitioner receives the benefit of the prisoner mailbox rule, which deems most documents filed when the prisoner gives them to prison officials to mail to the court. *See Stillman v. LaMarque,* 319 F.3d 1199, 1201 (9th Cir. 2003). The Court will assume he gave the petition to prison officials for mailing on the date he signed it, i.e., February 14, 2017, and deem the federal petition filed as of that date.

Petitioner raises two claims for relief: (1) ineffective assistance of counsel ("IAC") claim for failing to conduct proper pretrial investigation and depriving him of a defense that could have proven his innocence to the more serious charge of attempted murder; and (2) prosecutorial misconduct for admitting into evidence the false testimony by the victim. Dkt. No. 1 at 29, 31.

2

**DISCUSSION**

**A.    Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became law on April 24, 1996, and imposed for the first time a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners. Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest of the date on which: (1) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1). The time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the one-year time limit. *Id.* § 2244(d)(2).

The one-year period generally will run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). If a petitioner could have sought review by the state court of appeals or the state supreme court, but did not, the limitations period will begin running against him the day after the date on which the time to seek such review expired. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). Here, Petitioner's conviction became final on October 30, 2007, sixty days after his sentencing on August 31, 2007. *See Mendoza v. Carey*, 449 F.3d 1065, 1067 (9th Cir. 2006) (because California prisoner did not appeal his conviction, process of direct review became final 60 days after conviction); Cal. Rule of Court 8.308(a). Thus, the limitations period began running October 31, 2007, giving petitioner until October 31, 2008 to file his federal habeas petition. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001). The instant petition, filed on February 14, 2017, is untimely, unless petitioner is entitled to either (1) statutory tolling of the limitations period pursuant to 28 U.S.C. § 2244(d)(2); (2) delayed commencement of the limitations period pursuant to 28 U.S.C. § 2244(d)(1)(B)-(D); or (3) equitable tolling of the limitations period.

### B. Tolling

#### 1. Statutory Tolling

The one-year statute of limitations istolled under section 2244(d)(2) for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). Tolling applies to one full round of collateral review. *Carey v. Saffold*, 536 U.S. 214, 223 (2002). The limitations period is also tolled during the time between a lower state court's decision and the filing of a notice of appeal to a higher state court. *Id.* In California, where prisoners generally use the State's original writ system, this means that the limitations period remains tolled during the intervals between a state court's disposition of an original state habeas petition and the filing of the next original state habeas petition in a higher court, provided the prisoner did not delay unreasonably in seeking review in the higher court.[6] *Id.* at 220-25.

Here, petitioner states that he filed a state habeas petition in the Alameda County Superior Court that was denied on August 28, 2008. Dkt. No. 1 at 5. He neither indicates when that first state habeas petition was filed nor attaches a file-stamped copy, but under California law the state superior court was required to rule on the petition within sixty days of its filing date. *See* Cal. Rules of Court, rule 4.551(a)(3)(A). Therefore, the earliest date the petition could have been filed would have been on June 30, 2008.[7] Thus, the limitations period ran from October 31, 2007 to approximately June 30, 2008, for 243 days, before petitioner filed the first state habeas petition in the state superior court. Thus, when petitioner filed his first state habeas petition on approximately June 30, 2008, he had 122 days (365 days minus 243 days) of the limitations period remaining. Pursuant to *Carey*, statutory tolling of the limitations period should apply to the entire

---

[6] Gap tolling refers to the limitations period "remain[ing] tolled during the intervals between the state court's disposition of a state habeas petition and the filing of a petition *at the next state appellate level.*" *Nino v. Galaza*, 183 F.3d 1003, 1005 (9th Cir. 1999) (emphasis added). After *Carey*, this means that a state habeas petition is pending "in the absence of undue delay," while a California petitioner "complete[s] a full round of [state] collateral review" all the way to the California Supreme Court. *Biggs v. Duncan*, 339 F.3d 1045, 1048 (9th Cir. 2003) (internal quotation marks omitted).

[7] The Court notes that June 29, 2008 is exactly sixty days prior to August 28, 2008, but that date fell on a Sunday. Therefore, the Court assumes that the petition could have been filed on the next day business day, which is June 30, 2008.

4

time he was pursuing state collateral relief if he did not delay unreasonably in seeking review in the higher court. *Id.* However, respondent argues that petitioner is not entitled to statutory tolling for the time period he filed his multiple state habeas petitions in the state superior court, stating as follows:

> Although the statute of limitations is tolled during the pendency of a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim," 28 U.S.C. § 2244(d)(2), the numerous petitions filed in the Alameda County Superior Court in 2010, 2012, 2013 and 2016, were denied for lack of jurisdiction, as successive and/or untimely. Exhs. C, D, E and F. Thus, even assuming that the superior court petition filed in 2008 tolled the limitations period, the subsequent petitions filed in the superior court were not "properly filed" or were filed after the limitations period expired. *See White v. Martel*, 601 F.3d 882, 884 (9th Cir. 2010) ("tolling under 28 U.S.C. § 2244(d)(2) is unavailable where a state habeas petition is deemed untimely under California's timeliness standards"); *see also Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010), (holding that for statutory tolling to apply, "the petition cannot be untimely or an improper successive petition"); *accord Samad v. Adams*, 293 Fed. Appx. 478, 479 (9th Cir. 2008) (where state petition was denied as successive and untimely, the petition "was not 'properly filed' and did not toll the federal statute of limitations"). These petitions were not "properly filed" and, thus, did not toll the statute of limitations.

Dkt. No. 24 at 3. In addition, Respondent argues that petitioner's state habeas petitions filed in the state appellate and supreme courts in 2016 were filed after the limitations period had expired. *Id.*

An application is "properly filed" under section 2244(d)(2), when its delivery and acceptance, by the appropriate court officer for placement into the official record, are in compliance with the applicable laws and rules governing filings. *Artuz v. Bennett*, 531 U.S. 4, 8-9 (2000). These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. *Id.*

Here, the complete time frame that petitioner's state habeas petitions were pending in state court was almost eight and a half years, though he is not entitled to interval tolling in the time between some of these petitions as he did not proceed to a higher court. *See Biggs*, 339 F.3d at 1048. Arguably, the eight-year gap between petitioner's 2008 state superior court habeas petition and his 2016 state appellate court habeas petition could indicate that he delayed unreasonably in seeking review in the higher court. *See Carey*, 536 U.S. at 220-25. However, the Court need not address that issue because it agrees with respondent that petitioner is only entitled to statutory

5

tolling for "properly filed" petitions. *See Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005). Turning to two of Petitioner's state habeas petitions filed on August 20, 2010 and March 10, 2016, the state superior court denied them on October 20, 2010 and May 4, 2016, respectively, upon finding that his petitions were not in compliance based on the rule barring successive petitions and untimeliness. *See* Exs. C, F. In addition, on June 17, 2016, the court rejected the last state superior court habeas petition filed on May 27, 2016 by Petitioner as procedurally barred by the rule against successive petitions and abuse of the writ. *See* Ex. F. Under the law of the circuit, these petitions were not properly filed and did not toll the limitation period under § 2244(d)(2). *See Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010) (for § 2244(d)(2) tolling to apply, state "petition cannot be untimely or an improper successive petition"). The state superior court in its October 20, 2010 and May 4, 2016 decisions clearly stated that the petitions were denied as "untimely," and cited *In re Clark*, 5 Cal. 4th 750, 775 (1993)[8], *In re Sanders*, 21 Cal. 4th 697, 703 (1999), and *In re Robbins*, 18 Cal. 4th 770, 780 (1998). *See* Exs. C&F. *In re Sanders* discusses the procedural bars against untimely state habeas petitions and "insist[s] [that] a litigant mounting a collateral challenge to a final criminal judgment do so in a timely fashion." 21 Cal. 4th at 703. *In re Robbins* states that an untimely petition will be entertained on the merits if the petitioner demonstrates (i) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (ii) that the petitioner is actually innocent of the crime or crimes of which he or she was convicted; (iii) that the death penalty was imposed by a sentencing authority that had such a grossly misleading profile of the petitioner before it that, absent the trial error or omission, no reasonable judge or jury would have imposed a sentence of death; or (iv) that the petitioner was convicted or sentenced under an invalid statute. 18 Cal. 4th at 780-81. Finally, the Ninth Circuit has held that *In re Clark* deals specifically with the state procedural bar of untimeliness. *See Lakey v. Hickman*, 633 F.3d 782, 786 (9th Cir. 2011) (citing *Park v. California*, 202 F.3d 1146, 1152 n.3 (9th Cir. 2000)). Thus, the state superior court's statements and citations to these cases are clear rulings

---

[8] *In re Clark* was superseded by statute on other grounds as stated in *Briggs v. Brown*, 3 Cal. 5th 808, 842, (2017).

6

that these petitions were untimely. "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace*, 544 U.S. at 414 (citing *Carey*, 536 U.S. at 226). In *Pace*, the Supreme Court held that "[b]ecause the state court rejected petitioner's [postconviction] petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2)." *Id.* at 413 (brackets added). Consistent with *Pace*, petitioner's state habeas petitions filed in the state superior court on August 20, 2010, March 10, 2016, and May 27, 2016 were not "properly filed" applications which tolled the limitations period under section 2244(d)(2).[9] *Id.*

Because these habeas petitions were not "properly filed" in the state superior courts, they did not initiate any period of statutory tolling while they were pending. Thus, the remaining 122 days in the limitations period continued to run from August 28, 2008 (when the first state habeas petition was denied) to the time it expired 122 days later on December 29, 2008.[10]

Moreover, the state habeas petitions filed in the California Court of Appeal and the California Supreme Court in 2016, eight years after the statute of limitations period had expired, did not revive the limitations period or restart the clock. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003); *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001). Thus, petitioner's federal petition, which was deemed filed on February 14, 2017, is still untimely by more than eight years. Therefore, the instant petition was not timely based on statutory tolling.

### 2. Delayed Commencement

Section 2244(d)(1)(B)-(D) allows for delayed commencement of the limitations period to the date when (B) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (C) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court

---

[9] The Court need not analyze whether petitioner's 2012 and 2013 ex parte requests for various documents were "properly filed," because the time during which such requests were pending would not be eligible for statutory tolling because they did not seek "State post-conviction or other collateral review with respect to the pertinent judgment or claim." *See* 28 U.S.C. § 2244(d)(2).

[10] The Court notes that December 28, 2008 is 122 days after August 28, 2008, but that date fell on a Sunday. Therefore, the Court has moved the limitations period expiration date to the next business day, which is Monday, December 29, 2008.

7

and made retroactive to cases on collateral review; or (D) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(B)-(D).

Subsections B and C do not apply because petitioner does not assert that unconstitutional state action prevented him from filing or that the constitutional rights asserted in this petition are newly recognized by the Supreme Court. Thus, the Court now considers whether petitioner is entitled to delayed commencement of the limitations period under subsection D.

As mentioned above, petitioner's federal habeas petition alleges claims for ineffective assistance based on his defense counsel's failure to conduct a proper pretrial investigation and prosecutorial misconduct for the use of false testimony. In his opposition, petitioner seems to claim that he was unaware of the facts underlying his IAC and prosecutorial misconduct claims. Dkt. No. 25 at 2 (contending that "[o]ver time, petitioner learned of his current IAC claim, which led to the discovery of his prosecutorial misconduct claim"). Petitioner claims that "[his] attorney Margo George['s] inadequate representation, which is the basis of his current IAC claim, was prece[]ded by a patter[n] of ineffective assistance." *Id.* Petitioner claims that Attorney George "did not interpret any of the evidence, [and] [she] did not allow [him] to view any materials related to [his] case, except for the police report and investigator[']s report of interviews conducted . . . ." *Id.* In essence, petitioner claims that at no point did Attorney George or his three other attorneys "challenge the validity of the account of the incident given in the police report and by the victim." *Id.* at 4. Petitioner adds that "[i]nstead they withheld information favorable to petitioner . . . ." *Id.* Thus, petitioner argues that "[o]nce [he] became aware of his current IAC claim, he began seeking evidence to substantiate it . . . ." *Id.*

Specifically, petitioner claims that he only learned of the factual predicate of his claim in 2012, stating as follows:

> In 2012, petitioner learned how the trajectory of a bullet could be used to determine the position a person was in when the bullet struck. Petitioner began developing a second IAC claim[11] that his fourth

---

[11] Petitioner claims that in 2008, he filed a state habeas petition alleging his *first* IAC claim alleging that his other defense counsel, Steve Weinberg, Esq., "made the pretrial judge hostile towards petitioner." Dkt. No. 1 at 23. Plaintiff states that his petition was denied for failure to state a prima facie claim, and he "abandoned this claim after he was unable to obtain

8

>   attorney, Margo George, lied about what the trajectory would prove
>   and deprived petitioner of a possible defense.
>
>   Petitioner believed that to raise this claim, he would need the report
>   that described the angles the bullets struck the victim.

Dkt. No. 1 at 23-24 (footnote added). In his petition under the section relating to his IAC claim, petitioner describes his interaction with Attorney George during the pretrial proceedings as follows:

>   During pretrial proceedings, petitioner[']s attorney, Margo George, told him that the angle the bullets struck the victim would prove the way the prosecutor said the incident happened was the truth and petitioner had no choice but to take the deal offered by the prosecutor because the trial would be a guaranteed win for the prosecution and petitioner would receive life in prison. Ms. George failed to obtain the report that describes those angles, [*See* Exhibits A, B, C]. Had Ms. George conducted a proper investigation and obtained the report, it would have been shown that the prosecutor was not telling the truth, and that the victim committed perjury when recounting the incident during the preliminary hearing [*see* Exhibits D1, D2, E1-E5], thus providing petitioner a defense to the attempted murder charge.

*Id.* at 29-30. Petitioner then explains how his IAC claim led him to formulate his prosecutorial misconduct claim, stating that he "realized the prosecution should have turned over the report that described the trajectory of the bullets." *Id.* at 26. He elaborates as follows:

>   Upon researching prosecutorial misconduct, petitioner came across *U.S. v. Agurs* (1976) 427 U.S. 97, 96 S. Ct. 2392, and he realized he could show that the prosecution introduced testimony that he knew, or should have known was false, was material and prejudicial and also went uncorrected. So . . . petitioner claims for the reasons listed herein, he has good cause for a piecemeal presentation for the knowledge of the current claims was not known at the time of the filing of the initial claim in 2008.

*Id.* at 26-27.

To the extent that petitioner is attempting to argue that he is entitled to a delayed commencement of the limitations period to the date when the factual predicate of the IAC and prosecutorial misconduct claims could have been discovered through the exercise of due diligence under § 2244(d)(1)(D), the Court disagrees. "Section 2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence" that might support his claim. *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998). For

---

documentation to support the claim." *Id.*

9

purposes of this statute, the "factual predicate" of a claim is the petitioner's knowledge of the *facts* supporting the claim, not *evidentiary* support for the claim. *Id.*; *Escamilla v. Jungwirth*, 426 F.3d 868, 871 (7th Cir. 2005) *abrogated on another ground in McQuiggin v. Perkins*, 569 U.S. 383 (2013) ("Section 2244(d)(1)(D) does not restart the time when corroborating evidence becomes available; if it did, then the statute of limitations would fail in its purpose to bring finality to criminal judgments, for any prisoner could reopen the judgment by locating any additional fact.").

Here, both claims appear to concern a challenge to the victim's testimony at the preliminary hearing that she was on the ground when shot, i.e., his attorney was ineffective for failing to obtain the report that described the angles the bullets struck the victim, and the prosecutor committed misconduct by allowing the victim to falsely testify that she was "on the ground, five and a half feet away from [petitioner] when shot." Dkt. No. 1 at 29-32. Petitioner, who pled guilty, attempts to argue that he could have had a defense to the attempted murder charge but for: (1) his attorney's failure to conduct a "proper investigation" to obtain the aforementioned report; and (2) the prosecutor committing misconduct in allowing such false testimony. *Id.* at 29-30. In essence, petitioner argues that a delayed commencement of the limitations period is warranted because he discovered the factual predicate of his claims in 2012, when he "learned how the trajectory of a bullet could be used to determine the position a person was in when the bullet struck." *Id.* at 23.

However, long before 2012, petitioner was aware of the facts supporting such claims, because he was admittedly present at the incident and would have known to challenge the victim's testimony that she was on the ground when shot in order to raise a claim of prosecutorial misconduct for allowing false testimony. Further, as to any particular claim regarding his attorney's ineffective assistance in not obtaining the report, petitioner was also aware of the facts supporting such an IAC claim, because he admits that he knew of his attorney's deficiencies at the time she was representing him. Dkt. No. 25 at 2-4. As mentioned above, even if petitioner did not learn about the evidentiary support for his claims until 2012, he knew of the "factual predicate" of these claims before 2012, because he was aware of the *facts* supporting the claim, i.e., the victim's purportedly incorrect testimony about her position when shot, and the "patter[n] of ineffective

10

assistance," *see* Dkt. No. 25 at 2, during the time of his attorney's representation prior to his plea hearing. *Flanagan*, 154 F.3d at 199. Thus, the Court will not apply § 2244 (d)(1)(D).

### 3. Equitable Tolling

For similar reasons, the reasons cited above by petitioner do not entitle him to equitable tolling. The Supreme Court has determined that § 2244(d), AEDPA's statute of limitations, is subject to equitable tolling in appropriate cases. *Holland v. Florida*, 560 U.S. 631, 645 (2010). However, equitable tolling is unavailable in most cases because extensions of time should be granted only if "'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *See Calderon v. United States Dist. Court (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997) (citation omitted), *overruled in part on other grounds by Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998) (en banc). Specifically, equitable tolling applies only where a petitioner makes a showing that (1) he has been pursuing his rights diligently; and (2) "extraordinary circumstances" beyond his control prevented him from timely filing. *Holland*, 560 U.S. at 649; *accord Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006). The diligence required to establish entitlement to equitable tolling is "reasonable diligence." *Holland*, 560 U.S. at 653.

Petitioner bears the burden of showing "extraordinary circumstances were the cause of his untimeliness." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (citing *Stillman*, 319 F.3d at 1203). Where a petitioner fails to show "any causal connection" between the grounds upon which he asserts a right to equitable tolling and his inability to timely file a federal habeas application, the equitable tolling claim will be denied. *Gaston v. Palmer*, 417 F.3d 1030, 1034-35 (9th Cir. 2005). Further, such petitioner must show "his untimeliness was caused by an external impediment and not by his own lack of diligence." *Bryant v. Ariz. Att'y Gen.*, 499 F.3d 1056, 1061 (9th Cir. 2007) (citing *Roy v. Lampert*, 465 F.3d 964, 973 (9th Cir. 2006)).

To the extent petitioner attempts to argue that the statute of limitations period should be equitably tolled while he obtained various documents from Attorney George, *see* Dkt. No. 25 at 4, that argument fails. Specifically, as mentioned above, petitioner claims that Attorney George was ineffective for failing to obtain the report explaining the trajectory of the bullets. Petitioner points

11

out that he is a "layman . . . [with] no knowledge of criminal law and was completely depend[e]nt on defense counsel to interpret the evidence." Dkt. No. 1 at 27. Thus, petitioner argues that he "cannot be held to the expectation of having knowledge of the report that describes the trajectory of the bullets . . . ." *Id.* First, petitioner fails to explain how such a report (to which he claims he did not have access) was necessary for him to formulate the IAC and prosecutorial misconduct claims because, as mentioned above, petitioner was aware of the factual bases of his claims, i.e., he should have been able to challenge the victim's testimony that she was on the ground when shot because he was present at the scene. *See Ford v. Pliler*, 590 F.3d 782, 790 (9th Cir. 2009) (denying equitable tolling where, regardless of when counsel provided petitioner with his complete legal file, petitioner was aware of the factual bases of his claims earlier, thus his alleged inability to access the files could not have been the cause of the untimeliness); *United States v. Battles*, 362 F.3d 1195, 1196-1199 (9th Cir. 2004) (expressing doubt that counsel's delay in turning over a full set of transcripts actually prevented petitioner from meeting the statute of limitations); *Lloyd v. Van Natta*, 296 F.3d 630, 634 (7th Cir. 2002) ("equitable tolling does not excuse Mr. Lloyd's late filing simply because he was unable to obtain a complete trial transcript before he filed his § 2254 petition"). The Court has found above that petitioner is not entitled to a delayed commencement of the limitations period under section 2244(d)(1)(D) because he knew of the factual basis of his claims (including his attorney's deficient representation and the prosecutor's purported misconduct in allowing the victim to give false testimony relating to her position on the ground when shot) long before he filed the instant petition. Even if petitioner had alleged a lack of access to such a document during the *more than eight-year delay*, this alleged lack of access did not make it impossible for him to file a federal petition on time, *Beeler*, 128 F.3d at 1288, or, put differently, was not the cause of his untimeliness, *Spitsyn*, 345 F.3d at 799.

In addition, the Court finds unavailing petitioner's argument for equitable tolling based on the fact that he is a layman without any litigation experience. Ignorance of the law and lack of legal sophistication do not alone constitute extraordinary circumstances warranting equitable tolling. *Rasberry*, 448 F.3d at 1154 (cataloguing cases from other circuits and holding that "a *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance"); *see*

*also Hughes v. Idaho State Bd. of Corr.*, 800 F.2d 905, 909 (9th Cir. 1986) (illiteracy of *pro se* petitioner insufficient cause to avoid procedural bar); *United States v. Flores*, 981 F.2d 231, 236 (5th Cir. 1993) (*pro se* status, illiteracy, deafness and lack of legal training does not justify equitable tolling). Therefore, petitioner is not entitled to equitable tolling based solely on the fact that he is a layman without any litigation experience.

In sum, petitioner has not alleged any facts from which the Court could infer that his failure to raise his IAC and prosecutorial misconduct claims prior to the expiration of the limitations period was because of circumstances which were beyond his control and which made it impossible to file a timely federal petition. Instead, it was petitioner's eight-year delay in filing the instant federal habeas petition, rather than extraordinary circumstances, that led him to exceed the limitations period. *See Spitsyn*, 345 F.3d at 799; *see also Bryant*, 499 F.3d at 1061. The limitations period will not be equitably tolled. Therefore, because petitioner is not entitled to equitable tolling, the instant habeas petition, filed more than eight years late on February 14, 2017, is still untimely.

Accordingly, respondent's motion to dismiss is GRANTED, and the petition is DISMISSED because it was not timely filed under 28 U.S.C. § 2244(d)(1).[12]

### C. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing Habeas Corpus Cases Under Section 2254, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c)

---

[12] In his opposition, petitioner moves for an evidentiary hearing stating that such a hearing is "necessary to determine the facts of the claims . . . ." Dkt. No. 25 at 5. Because the Court has found that the petition must be dismissed as untimely, and that petitioner has not shown that he is entitled to a delayed commencement of the limitations period or to equitable tolling, his motion for an evidentiary hearing is DENIED as moot.

13

is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

## CONCLUSION

For the foregoing reasons:

1. Respondent's motion to dismiss the instant petition as untimely is GRANTED.[13]

2. A certificate of appealability is DENIED. Petitioner may seek a COA from the Ninth Circuit Court of Appeals.

3. The Clerk of the Court shall close the file.

4. Additionally, the Clerk is directed to substitute Warden George Jaime on the docket as the respondent in this action.

5. This order terminates Docket No. 24.

**IT IS SO ORDERED.**

Dated: 2/6/2019

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[13] Because the Court dismisses the entire petition as untimely, it need not address respondent's alternative argument that the petition is procedurally defaulted.

14